UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DARNELL PITTMAN, SR., ) | |
| ) | |
| Petitioner ) | |
| ) | |
| v. ) | Case No. 1:12-cv-00046-JHH-HGD |
| ) | |
| JOHN T. RATHMAN, et al. ) | |
| ) | |
| Respondents ) | |

**MEMORANDUM OPINION**

Petitioner, Darnell Pitman, Sr., has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  He challenges the validity of a disciplinary hearing he received while incarcerated in the Special Management Unit (SMU) at the United States Penitentiary (USP) in Florence, Colorado.  At the time he filed the § 2241 petition, he was incarcerated at the Federal Correctional Institution at Talladega,[1] Alabama.

Petitioner alleges that his due process rights were violated because he was denied the use of camera footage, denied a Unit Discipline Committee (UDC) Hearing, and denied witnesses at his hearing before the Discipline Hearing Officer (DHO).  He also alleges that the DHO was not impartial because (1) petitioner's staff

---

[1] Petitioner is now housed at the USP in Lewisburg, Pennsylvania.

representative was denied access to unspecified disciplinary documents relevant to his DHO hearing; (2) the DHO withheld the names of petitioner's witnesses from his staff representative; and (3) the DHO questioned petitioner's witness outside petitioner's hearing and his staff representative's presence, without petitioner's consent. He also contends that the DHO's finding of guilt was not based on sufficient evidence in the record. (Doc. 1, Petition).

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is serving a 142-month sentence followed by five years of supervised release based on his conviction for Robbery (Carjacking), in violation of 18 U.S.C. § 2119. On January 27, 2011, Pittman received Incident Report (IR) 2116975 for Threatening Another, Code 203. According to the IR, on January 25, 2011, at approximately 7:00 p.m., Pittman called an officer to his cell and made the following statement:

> If they continued to come to my cell and disrespect me by taking the paper off my light I will throw my feces, cum, and blood on them . . . . I will kill one of you, it is easy enough to come out of the cuffs and kill someone. . . . I will prevent one of you from going home to your family.

(Doc. 8-2, IR 2116975; Doc. 8-3, Decl. of DHO Esther Slater (Slater Decl.), at ¶ 4).

Pittman received a copy of the IR on January 26, 2011, at 3:00 p.m. (*Id.*). An

investigation was conducted by another staff member later that day. (*Id.*). During the investigation, Pittman made the following statement: "I made no threat, I gave them examples of what could happen if they continue to disrespect inmates." Pittman presented no other written statements or evidence during the investigation, and he exhibited a fair attitude. (*Id.*).

A hearing before the UDC was held on January 27, 2011; however, Pittman refused to participate and became verbally aggressive. (*Id.*).[2] Due to the serious nature of the charges, the UDC referred the matter for a formal hearing before the DHO. (Doc. 8-4, Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing, dated January 27, 2011; Doc. 8-3, Slater Decl., at ¶ 5). However, on March 21, 2011, a determination was made that Pittman was entitled to a second UDC hearing due to an administrative error. It was determined that even if Pittman refused the hearing, he still had a right to request a staff representative and witnesses. (Doc. 8-5, Notice of Discipline Hearing before the DHO, dated

---

[2] Petitioner alleges in his petition that on January 27, 2011, he was having a conversation with Lt. J. Dixon, when Counselor O'Niel stood by and eavesdropped on the conversation. Petitioner further alleges that O'Niel assumed petitioner was being disruptive based on what was being said in the conversation and left the area. Petitioner claims that O'Niel never advised that he was there to conduct a UDC hearing and that any indication that he refused the first UDC hearing is incorrect.

January 27, 2011, with note, and Advisement of Incident Report Delays, dated March 21, 2011; Doc. 8-3, Slater Decl., at ¶ 5).

The Warden authorized the hearing to go beyond the normal time limitations. (*Id.*). The second UDC hearing was held on March 25, 2011. (Doc. 8-6, Page One of IR 2116975, dated March 23, 2011; Doc. 8-3, Slater Decl., at ¶ 5). At the hearing, Pittman stated that he never threatened the officer. He also stated there was a camera at his door that he wanted reviewed. At the conclusion of the hearing, the matter was referred to the DHO. (*Id.*). Pittman received and signed for the Written Notice of the DHO Hearing, and the Inmate Rights at Discipline Hearing form explaining his rights at the DHO hearing on July 5, 2011. (Doc. 8-7, Notice of the DHO Hearing form, Inmate Rights at Discipline Hearing form, dated March 23, 2011, Duties of Staff Representative, dated March 23, 2011, Doc. 8-3, Slater Decl., at ¶ 5).

When petitioner was served with the Notice of DHO Hearing form on March 23, 2011, he requested two inmate witnesses, Witness "O" and Witness "G," camera footage, and a staff representative. Jay O'Niel, UDC Chairman, ascertained there was no camera recording of the incident, and he wrote a memorandum stating such to the DHO. (Doc. 8-8, Memorandum from Jay O'Niel, UDC Chairman, to C. Miedich, dated March 24, 2011; Doc. 8-3, Slater Decl., at ¶ 5).

On April 22, 2011, prior to the DHO hearing, Pittman was transferred to the SMU at FCI Talladega. The DHO hearing was subsequently held on July 14, 2011. (Doc. 8-9, Discipline Hearing Report #2116975, dated July 14, 2011; Doc. 8-3, Slater Decl., at ¶ 6). Pittman's due process rights were read to and reviewed with him by the DHO at the time of this hearing. (*Id.*). Pittman stated he understood his rights, and his staff representative was present. (*Id.*). Both Pittman and his staff representative stated they had spoken prior to the hearing and were ready to proceed. (*Id.*).

Regarding Pittman's request for camera footage, according to Jay O'Niel, Counselor, USP Florence, no camera was used. (*Id.*). Regarding the request for inmate witnesses, Pittman was advised that Witness "O" had been released from the BOP and was no longer available. (Doc. 8-3, Slater Decl., at ¶ 6). Witness "G" was questioned and stated that Pittman did not threaten anyone. (*Id.*). Pittman did not specify what additional information Witness "O" would add or how Witness "G's" presence at the hearing would alter his testimony. (*Id.*).

Pittman provided the DHO with several documents he alleged supported his claim that his hearings should have been conducted prior to his leaving USP Florence. Pittman also stated he was being retaliated against for filing paperwork. The staff representative stated Pittman could not provide the names of any other

witnesses as he did not know their names.  The DHO noted the matter was previously returned for a re-hearing at the UDC level and staff had permission from the Warden to conduct the UDC hearing later.  (*Id.*).

After reviewing the evidence, the DHO concluded that Pittman had committed the charged infraction.  (Doc. 8-6, Page One of IR 2116975, dated March 23, 2011; Doc. 8-3, Slater Decl., at ¶ 7).  Slater gave the greater weight of the evidence to the written report and the statement Pittman provided to the investigative lieutenant in which Pittman stated he gave no threat, just gave examples of what could happen if staff continued to disrespect inmates.  Slater noted the statement to the lieutenant could only lead the DHO to believe that Pittman made the statements as reported in the IR.

DHO Slater imposed sanctions of disciplinary segregation for 30 days, disallowance of 27 days of good conduct time, forfeiture of non-vested good conduct time of 27 days, and loss of phone privileges for six months to be restored on January 13, 2012.  (*Id.*).  Slater, explaining the reasons for the sanctions to Pittman, stated the action of any inmate to threaten staff or other inmates poses a serious threat to the safety, and welfare of both staff and inmates and the behavior jeopardizes the orderly running of the institution.  (*Id.*).

Disciplinary segregation that was imposed as punishment, and the disallowance of good conduct time and forfeiture of non-vested good conduct time, met petitioner's PLRA sentence and put him on notice that should he violate the rules and regulations, his incarceration would be prolonged. (*Id.*). Although loss of phone privileges was not directly related to the act, the DHO found that Pittman's actions warranted greater sanctions to demonstrate the seriousness of the act. (*Id.*). DHO Slater advised Pittman of his right to appeal the action within 20 calendar days under the Administrative Remedy Procedure. (*Id.*). She further advised Pittman that the Report might be delivered beyond the requisite 10 days due to the volume of hearings conducted and her lack of clerical assistance. (*Id.*). Slater completed and signed the DHO Report on July 22, 2011. (*Id.*). The Report was delivered to Pittman on August 9, 2011. (*Id.*).

Pittman thereafter exhausted his administrative remedies by appealing the disciplinary to the Regional and Central levels. (Doc. 8-10, Administrative Remedy Packet 656186-A1). The disciplinary action and sanctions imposed were affirmed at each level. (*Id.*).

## DISCUSSION

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), state inmates filed suit under § 1983 alleging several prison rules and regulations "did

not comply with the Due Process Clause of the Fourteenth Amendment . . . ." *Id.* at 542-43, 94 S.Ct. at 2968. In Nebraska, a state statute created good time credits and state prisoners could lose those good time credits if they were guilty of "serious misconduct." *Id.* at 547, 94 S.Ct. at 2970. The Supreme Court held that a prisoner had a protected liberty interest in statutory good time credits, and thus had a constitutional right to procedural due process in a disciplinary hearing. *Id.* at 555-57, 94 S.Ct. at 2974-75.

The Supreme Court in *Wolff* outlined the specific hearing procedures that prison disciplinary panels must comply with to satisfy the standards of procedural due process in the prison setting. *Id.* at 556, 94 S.Ct. at 2975 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). *Wolff* instructed that prisoners must receive: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action. *Id.* at 563-67, 94 S.Ct. at 2978-80. Inmates do not "have a right to either retained or appointed counsel in disciplinary hearings." Where an illiterate inmate is involved, however, or when the complexity of the issue makes

it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, *Wolff* requires that the inmate should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff. *Id.* at 570, 94 S.Ct. at 2982.

Similarly, in *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the Supreme Court addressed the requirements of procedural due process in the prison setting. Inmate Hill had his good-time credits revoked after a disciplinary board found him guilty of violating prison regulations for his involvement in an assault on another prisoner. *Id.* at 448, 105 S.Ct. at 2770. His conviction, in turn, was based on testimony by a prison guard at his disciplinary hearing. *Id.* at 447, 105 S.Ct. at 2770. *Hill* instructed that the revocation of good time credits only satisfies minimal standards of procedural due process if "the findings of the prison disciplinary board are supported by *some evidence* in the record." *Id.* at 454, 105 S.Ct. at 2773 (emphasis added). The Supreme Court also advised that "[a]scertaining whether this [due process] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455, 105 S.Ct. at 2774. According to the Supreme Court, "the relevant question is whether there is *any* evidence in the

record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56, 105 S.Ct. at 2774 (emphasis added).

To the extent that petitioner challenges the imposition of the sanctions of disciplinary segregation and loss of telephone privileges, he has not stated a claim for a due process violation. An inmate would only be constitutionally entitled to procedural due process if he were deprived of a protected liberty interest. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 487, 115 S.Ct. 2293, 2302, 132 L.Ed.2d 418 (1995). in *Sandin v. Conner*, the United States Supreme Court held that the touchstone of the inquiry into whether a protected liberty interest exists is whether the conditions "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. at 2300, *implicitly overruled on other grounds by Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). An inmate contending that the conditions of confinement give rise to a constitutionally-protected liberty interest must show that the conditions constitute an "atypical and significant hardship" when compared to the ordinary incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 223, 125 S.Ct. 2384, 2394, 162 L.Ed.21d 174 (2005). *See also Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) ("[T]he Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due

process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300). Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87, 115 S.Ct. at 2301-02).

The mere confinement to disciplinary segregation and loss of telephone privileges did not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Therefore, any due process claim with respect to those sanctions is without merit. However, the loss of good conduct time does implicate a liberty interest and requires the procedural due process requirements set out in *Wolff*.

With regard to petitioner's claim that he did not have an impartial hearing officer, *Wolff*'s requirement prohibits only officials with a direct personal or otherwise substantial involvement in the circumstances underlying the charge from acting as hearing officer. This includes only those such as the charging and the investigating staff officers who were directly involved in the incident or a witness. Because DHO Slater was not involved in the circumstances underlying the charge or the investigation and charging, she was "impartial" as *Wolff* defines that term. The

actions which petitioner alleges do not call into question her impartiality. Petitioner does not specify what disciplinary documents were allegedly withheld from his staff representative. The names of the witnesses requested by petitioner clearly appear on the Notice of DHO Hearing form (Doc. 8-7); therefore, they were available to petitioner's staff representative.[3] Further, the fact that Counselor O'Niel was on the UDC, reported that petitioner refused his initial UDC hearing, and also reported that there was no recording of the incident does not violate the requirement for an impartial hearing officer.

At the DHO hearing, Pittman had a staff representative. The record does not reflect whether the staff representative received a copy of the Incident Report before the hearing. However, at the DHO hearing, Pittman stated that both he and his representative were ready to proceed. Furthermore, the record does reflect that petitioner was advised of the charges against him well in advance of the hearings on these incidents. This is all that is required by *Wolff*.

In this case, the record evidence submitted by respondent reflects that the prison officials complied with the requirements of *Hill* and *Wolff*. Pittman received

---

[3] Title 28 C.F.R. § 541.14(b)(2) states, in relevant part, "[I]f the case is ultimately forwarded to the Discipline Hearing Officer, the DHO shall give a copy of the investigation and other relevant materials to the inmate's staff representative for use in presentation on the inmate's behalf." There is no evidence, apart from petitioner's conclusory assertions, that his staff representative was not provided with all materials required by this regulation.

a detailed written notice of the charges against him, and of his rights during the investigations and hearings. *See Wolff*, 418 U.S. at 563, 94 S.Ct. at 2978 (requiring advance written notice of charges). Pittman had a staff representative for the DHO hearing and had the opportunity to present evidence and witnesses, as stated in the notice provided before his disciplinary hearings. *See id.* at 566, 94 S.Ct. at 2979 (stating that prisoners should be allowed to call witnesses and present evidence so long as it does not interfere with institutional safety or legitimate correctional goals). Respondent also presented evidence that Pittman received a written statement of the findings against him and the evidence relied upon by the DHO. *See id.* at 563, 94 S.Ct. at 2978 (requiring that fact-finder give prisoner written notice of evidence relied on and reasons for disciplinary action).

Petitioner received notice of the charge against him less than three days after the incident. On March 23, 2011, he met with the UDC and was advised of his right to have a written copy of the charges against him at least 24 hours before a hearing before a DHO, the right to have a staff representative to assist him and the right to call witnesses in his behalf. The fact that the original UDC hearing was not held on January 27, 2011, for whatever reason, was not a constitutional violation.[4]

---

[4] Title 28 C.F.R. § 541.7(c) states that the UDC will ordinarily review an incident report within five work days after it is issued.. However, "a violation of a prison regulations in itself is not a constitutional violation." *Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000) (citing *Jackson*

Petitioner was afforded a staff representative at the DHO hearing and was allowed to present the statement of one of his requested witnesses. That witness stated that Pittman did not threaten anyone. Pittman stated when he received the Notice of DHO Hearing form that his other witness also would have denied that petitioner threatened anyone, and the Court will assume that the witness would have testified accordingly. After the hearing, petitioner was given a written statement by the fact-finder of the evidence relied upon and the reasons for each disciplinary action. A review of the disciplinary shows that it was supported by some evidence in the record. The DHO stated that she found the greater weight of the evidence–specifically the written disciplinary report and the statement provided by petitioner to the investigative lieutenant in which he admitted that he did not make a threat, only gave examples of what could happen if officers continued to disrespect inmates–supported a finding that petitioner made threats. Bureau of Prisons (BOP) Program Statement (PS) 5270.09 states that "[t]he phrase 'greater weight of the evidence' refers to the strength of the evidence, not to its quantity or to the number of witnesses testifying." Therefore, the additional testimony of the witness who had been released before the DHO hearing would not have changed the outcome of the

---

*v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989)).

hearing. While petitioner complains that he was not allowed to introduce a recording of the incident at the hearing, the evidence is that no such recording was made.

According to PS 5270.09, there is no specific time limit for a DHO hearing to be conducted after a UDC hearing, as long as the inmate receives written notice of the DHO hearing at least 24 hours in advance. Further, if a witness requested by the inmate is not available to appear, a written statement may be requested by the DHO or staff representative for consideration at the hearing. *See also* 28 C.F.R. § 541.8(f)(4). The PS and regulations also provide that, "Only the DHO may directly question witnesses at the DHO's hearing. Any questions by you or your staff representative must be submitted to the DHO, who will present the question to the witness in his/her discretion." 28 C.F.R. § 541.8(f)(5). Therefore, any delay in the conduct of the DHO hearing did not rise to the level of a deprivation of constitutional due process. The same is true with respect to petitioner's complaint that he and his staff representative were not allowed to question witnesses directly.

Based on the foregoing, the Court finds that Pittman's disciplinary proceeding comported with the due process requirements of *Wolff*, and there was some evidence to support the finding of guilt, as required by *Hill*. Therefore, the petition for writ of habeas corpus is due to be denied.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the  26th  day of September, 2013.

_____
SENIOR UNITED STATES DISTRICT JUDGE